626 So.2d 192 (1993)
CITY OF MIAMI BEACH, Petitioner,
v.
Russell GALBUT, Respondent.
No. 80780.
Supreme Court of Florida.
October 21, 1993.
Laurence Feingold, City Attorney and Jean K. Olin, First Asst. City Atty., Miami Beach, for petitioner.
*193 David H. Nevel, Miami Beach, for respondent.
Philip C. Claypool, Gen. Counsel and Julia Cobb Costas, Staff Counsel, Tallahassee, amicus curiae for State of Florida Com'n on Ethics.
KOGAN, Justice.
We have for review Galbut v. City of Miami Beach, 605 So.2d 466 (Fla. 3d DCA 1992), in which the court certified the following question as one of great public importance:
WHETHER THE ANTI-NEPOTISM LAW PROHIBITS THE APPOINTMENT OF A CITY COMMISSIONER'S RELATIVE TO THE CITY'S BOARD OF ADJUSTMENT WHERE (1) APPOINTMENTS ARE MADE BY A FIVE-SEVENTHS VOTE OF THE CITY COMMISSION; (2) THE RELATED CITY COMMISSIONER ABSTAINS FROM VOTING; AND (3) THE RELATED CITY COMMISSIONER TAKES NO ACTION WHICH IN ANY WAY ADVOCATES THE APPOINTMENT OF THE RELATIVE.
Id. at 468. We have jurisdiction under Article V, section 3(b)(4) of the Florida Constitution.
Russell Galbut served on the Miami Beach Zoning Board of Adjustment for ten years. Members of this Board serve without compensation and are chosen by a five-sevenths vote of the City Commission for a one-year term. In 1991, Galbut's father-in-law, Seymour Eisenberg, was elected to the City Commission. After the election, Galbut's term on the Board expired and he sought reappointment. The City Attorney determined that section 112.3135(2)(a), Florida Statutes (1991), prohibited Galbut's reappointment. Section 112.3135(2)(a) provides:
A public official may not appoint, employ, promote, or advance, or advocate for appointment, employment, promotion, or advancement, in or to a position in the agency in which he is serving or over which he exercises jurisdiction or control any individual who is a relative of the public official. An individual may not be appointed, employed, promoted, or advanced in or to a position in an agency if such appointment, employment, promotion, or advancement has been advocated by a public official, serving in or exercising jurisdiction or control over the agency, who is a relative of the individual.
In response to the City Attorney's conclusion, Galbut brought a declaratory action in circuit court. The court adopted a general master's report finding that the anti-nepotism law precluded Galbut's reappointment. On appeal, the district court reversed, holding that the anti-nepotism law did not preclude Galbut's reappointment by the collegial body if Galbut's father-in-law recused himself and did not in any way advocate the reappointment. The court reasoned that because there was no affirmative action by the individual public official either to make or advocate Galbut's appointment, this case did not fit within the plain language of the statute. The court also noted that due to the statute's penal nature, any doubts as to its meaning must be resolved in favor of a narrow construction. 605 So.2d at 467. For the reasons set forth below, we agree that section 112.3135(2) does not prohibit Galbut's reappointment to the Board of Adjustment.
The City of Miami Beach maintains that Florida's anti-nepotism law should be liberally construed to mean that relatives of members of appointing authorities should not be appointed by boards or commissions on which their relatives serve. The City maintains that a public official's abstention will not resolve the concerns the anti-nepotism law was designed to address.
It is well settled that where a statute is clear and unambiguous, as it is here, a court will not look behind the statute's plain language for legislative intent. See In Re McCollam, 612 So.2d 572, 573 (Fla. 1993); Holly v. Auld, 450 So.2d 217, 219 (Fla. 1984). A statute's plain and ordinary meaning must be given effect unless to do so would lead to an unreasonable or ridiculous result. 612 So.2d at 573; 450 So.2d at 219.
The plain language of the statute at issue indicates that only overt actions by a public official resulting in the appointment of *194 that official's relative are prohibited. Section 112.3135(2)(a) provides in pertinent part:
A public official may not appoint ... or advocate for appointment ... to a position in the agency . .. over which he exercises jurisdiction or control any individual who is a relative of the public official. An individual may not be appointed ... to a position in an agency if such appointment ... has been advocated by a public official ... exercising jurisdiction or control over the agency, who is a relative of the individual.
(Emphasis added). As the district court noted,
[t]he statute is addressed to the individual public official and to the relative of that public official. It prohibits the public official from taking overt action to appoint a relative, either by making the appointment, or advocating the relative for appointment. Similarly, the relative may not accept the appointment if the appointment has been made or advocated by the related public official.
605 So.2d at 467.
This construction is consistent with other provisions of chapter 112. In particular, section 112.311(2), Florida Statutes (1991), provides that it is
essential that government attract those citizens best qualified to serve. Thus, the law against conflict of interest must be so designed as not to impede unreasonably or unnecessarily the recruitment and retention by government of those best qualified to serve.
In a similar vein, section 112.311(4), Florida Statutes (1991), makes clear that the act was intended to protect the integrity of the government and to facilitate the recruitment and retention of qualified personnel by prescribing restrictions against conflicts of interest "without creating unnecessary barriers to public service."
Moreover, even if we were to find the anti-nepotism statute ambiguous, in light of its penal nature,[1] a strict construction would be in order. State ex rel. Robinson v. Keefe, 111 Fla. 701, 149 So. 638 (Fla. 1933) (strictly construing predecessor to current anti-nepotism law because it was penal in nature). When a statute imposes a penalty, any doubt as to its meaning must be resolved in favor of strict construction so that those covered by the statute have clear notice of what conduct the statute proscribes. State v. Llopis, 257 So.2d 17, 18 (Fla. 1971).
Thus, the City's position that Florida's anti-nepotism statute should be liberally interpreted for the public benefit, in accordance with past Attorney General and Ethics Commission opinions on this issue, is clearly misplaced. We acknowledge the resulting conflict with the administrative decisions cited by the City, but point out our authority to overrule agency decisions that erroneously interpret a statute. See, e.g., Florida Indus. Comm'n v. Manpower, Inc., 91 So.2d 197 (Fla. 1956) (although court was reluctant to interfere with the agency's interpretation of a penal statute, it overruled extensive and erroneous administrative interpretation).
Also misplaced is the City's reliance on Morris v. Seely, 541 So.2d 659 (Fla. 1st DCA), review dismissed, 548 So.2d 663 (Fla. 1989), in which the First District Court of Appeal held that the anti-nepotism law precluded the promotion of a sheriff's brother employed as a deputy despite the fact that the sheriff abstained from involvement in the promotion decision. Morris is clearly distinguishable from the present case in that the public official in Morris could not completely abstain from taking part in his relative's promotion. Id. at 660. Although the sheriff abstained from the decision-making process, once the decision was made, the sheriff or his designee had to sign the promotion appointment. Id. By signing the appointment, the sheriff took affirmative action to promote his brother, contrary to the plain language of the anti-nepotism law. In this case, only five of the seven City Commissioners must vote in favor of Galbut to affirm his reappointment; no affirmative action by Commissioner Eisenberg is required to effectuate the reappointment.
In conclusion, consistent with the plain language of section 112.3135(2)(a), we construe Florida's anti-nepotism law so as *195 not to create an unnecessary barrier to public service by otherwise qualified individuals, such as Galbut.[2] Accordingly, we approve the decision below, and hold that Florida's anti-nepotism law does not prohibit Galbut's reappointment by a five-sevenths vote of the city commission, so long as Galbut's city commissioner relative abstains from voting and in no way advocates the reappointment.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES and HARDING, JJ., concur.
NOTES
[1] See § 112.317, Fla. Stat. (1991).
[2] Galbut served for ten years on the Board of Adjustment and is obviously well qualified for the position he seeks.