Dear Mr. Miller:
As General Counsel to the Housing Finance Authority of Palm Beach County, Florida, and at the request of a majority of the members of the authority, you have requested my opinion on the following question:
Does section 159.606, Florida Statutes, prohibit a person from being a member of a housing finance authority if the member's spouse is a partner in a law firm that provides legal services to the developers of one or more "qualifying housing developments" requesting financing from the authority?
In sum:
Section 159.606, Florida Statutes, does not prohibit a person from being a member of a housing finance authority if the member's spouse is a partner in a law firm that provides legal services to the developers of one or more "qualifying housing developments" requesting financing from the authority.
You state that the Housing Finance Authority of Palm Beach County was created by the Board of County Commissioners of Palm Beach County in 1979 pursuant to Part IV of Chapter 159, Florida Statutes. A primary function of the authority is to issue bonds to finance "qualifying housing developments" as defined in section 159.603(6), Florida Statutes. Such bonds are repayable solely from the revenues or receipts of the qualifying housing development.[1]
Your letter indicates that a person has recently been appointed to the housing finance authority whose spouse is a partner in a law firm that represents a number of affordable housing developers with respect to all legal needs including, but not limited to, acquisition and financing of qualifying housing developments. Several developers represented by the spouse's law firm currently have applications pending before the authority requesting the authority to issue bonds on their behalf. You have further informed us that the new authority member has acknowledged that her spouse's position as a partner in this law firm will present a voting conflict of interest under section 112.3143, Florida Statutes, if the law firm's clients are seeking action from the authority and she has indicated that she intends to declare a voting conflict when those situations arise.
I understand your question to be whether a contractual relationship for legal services between the board member's spouse and the developers of housing developments requesting financing from the housing finance authority could produce a conflict of interest for the board member by producing a "direct or indirect" interest in violation of section 159.606, Florida Statutes, and if such an interest exists, whether the board member is then disqualified from holding office.
Section 159.606, Florida Statutes, describes conflicts of interest for members or employees of a housing finance authority and sets forth disclosure requirements:
"No member or employee of a housing finance authority shall acquire any interest, direct or indirect, in any qualifying housing development or in any property included or planned to be included in such a development, nor shall a member or employee have any interest, direct or indirect, in any contract or proposed contract for materials or services to be furnished or used in connection with any qualifying housing development. If any member or employee of a housing finance authority owns or controls an interest, direct or indirect, in any property included or planned to be included in any qualifying housing project, the member or employee shall immediately disclose the same in writing to the housing finance authority. Such disclosure shall be entered upon the minutes of the housing finance authority. Failure so to disclose such interest shall constitute misconduct in office."
Nothing in Part IV, Chapter 159, Florida Statutes, defines or otherwise describes what may be meant by "direct or indirect" interests.
I am aware of no court cases construing the provisions of section 159.606, Florida Statutes, and the lone Attorney General Opinion construing the statute sheds no light on the question presented here. However, the Florida Commission on Ethics has, on multiple occasions, addressed potential conflicts of interest arising from a spouse's employment or contractual relationships. In those cases, the Commission determined that it is the business relationships of the public officer — not those of the spouse — that are controlled by the relevant ethics laws.[2]
Additionally, as the Florida Supreme Court stated in City of MiamiBeach v. Galbut, a 1993 nepotism case, [3] provisions of Florida's ethics code, like the conflict of interest provisions in section 159.606, Florida Statutes, are penal in nature and any doubts relating to the meaning of such a statute must be resolved in favor of a narrow construction.[4] The court determined that this narrow construction was consistent with the conflict of interest provisions of the Ethics Code providing that it is
"essential that government attract those citizens best qualified to serve. Thus, the law against conflict of interest must be so designed as not to impede unreasonably or unnecessarily the recruitment and retention by government of those best qualified to serve."[5]
This reasoning would appear to be equally applicable to conflict of interest provisions elsewhere in the Florida Statutes.
Based on the failure of section 159.606, Florida Statutes, to extend application of the conflicts of interest provision to specifically cover or include the spouse of a public officer, this office will not read such an extension into the statute. In addition, a strict construction of this statute is appropriate due to its penal nature.[6] Those covered by a penal statute must have clear notice of what the statute proscribes and I cannot say that this language would have put a member of a housing finance authority on notice that his or her spouse's economic/professional pursuits would be limited by the member's service on a housing finance authority.[7] The plain language of section 159.606, Florida Statutes, indicates that only members or employees of a housing finance authority are prohibited from acquiring "any interest, direct or indirect" in any qualifying housing development or having any interest in a contractual relationship to be used in connection with a qualifying housing development.[8] I believe that this result is consistent with the Ethics Commission's handling of comparable issues arising under Florida's Code of Ethics.
In sum and in response to your question, it is my opinion that section 159.606, Florida Statutes, does not prohibit a person from being a member of a housing finance authority if the member's spouse is a partner in a law firm that provides legal services to the developers of one or more "qualifying housing developments" requesting financing from the authority.
Sincerely,
 Pam Bondi Attorney General
PB/tgh
[1] See s. 159.62, Fla. Stat.
[2] See, e.g., CEO's 92-19 (1992), 91-06 (1991), 89-28 (1989), 88-43 (1988), and 85-52 (1985) (no prohibited conflict of interest exists where the spouse of a county commissioner is a member of a law firm which represents clients before the board of county commissioners).
[3] Section 112.3135(2)(a), Fla. Stat. (1993).
[4] City of Miami Beach v. Galbut,626 So. 2d 192, 193 (Fla. 1993).
[5] Id. at 194, citing s. 112.311(2), Fla. Stat. (1991).
[6] City of Miami Beach v. Galbut,626 So. 2d 192 (Fla. 1993).
[7] Id. at 194.
[8] A statute's plain and ordinary meaning must be given effect unless to do so would lead to an unreasonable or ridiculous result. In reMcCollam, 612 So. 2d 572, 573; Holly v. Auld,450 So. 2d 217, 219 (Fla. 1984); City of Miami Beach v. Galbut,626 So. 2d 192 (Fla. 1993).